IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **MEDICOR, LTD., et al.,** | : | **Case No. 07-10877 (MFW)** |
| | : | |
| Debtor. | : | |
| | : | |
| **Larry L. Bertsch, as court-appointed receiver** | : | **Adversary Proceeding No. _____** |
| **of Southwest Exchange, Inc., et al.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **MediCor, Ltd.,** | : | |
| **MediCor Europe Holdings ApS,** | : | |
| **ES Holdings SAS,** | : | |
| **Laboratories Eurosilicone SAS,** | : | |
| **Silver Oak Capital, LLC,** | : | |
| **HFTP Investment, LLC,** | : | |
| **Promethean I Master, Ltd,** | : | |
| **Promethean II Master, LP, and** | : | |
| **Portside Growth and Opportunity Fund,** | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT FOR (1) FRAUDULENT TRANSFER; (2) UNJUST ENRICHMENT;(3) EXPRESS OR RESULTING TRUST; (4) CONSTRUCTIVE TRUST; (5) TURNOVER OF TRUST ASSETS; (6) EQUITABLE LIEN; (7) DECLARATORY JUDGMENT THAT PLAINTIFF'S INTERESTS IN TRUST ASSETS ARE NOT AVOIDABLE; (8) DECLARATORY JUDGMENT THAT TRUST ASSETS ARE NOT PROPERTY OF DEBTORS' BANKRUPTCY ESTATES; (9) DECLARATORY JUDGMENT THAT LENDERS' LIENS AND SECURITY INTERESTS EITHER DO NOT ATTACH TO TRUST ASSETS OR ARE SUBORDINATE AND JUNIOR TO PLAINTIFF'S INTERESTS IN TRUST ASSETS; AND (10) ACCOUNTING**

Plaintiff Larry L. Bertsch, as court-appointed receiver (the "Receiver" or "Plaintiff") of

Southwest Exchange, Inc.("Southwest"), Blackstone Limited, LLC ("Blackstone"), and other

entities,[1] by and through his undersigned counsel, for his complaint against MediCor, Ltd. ("Medicor"), one of the debtors in these chapter 11 cases, and MediCor Europe Holdings ApS ("Medicor Europe"), ES Holdings SAS ("ES Holdings"), and Laboratories Eurosilicone SAS ("Eurosilicone"), non-debtor subsidiaries of MediCor, Ltd.; and Silver Oak Capital, LLC, HFTP Investment, LLC, Promethean I Master, Ltd (f/k/a GAIA Offshore Master Funds, Ltd), Promethean II Master, LP, Portside Growth and Opportunity Fund, certain lenders to MediCor, Ltd., each of which claims a lien or security interest against the non-Debtor subsidiaries (collectively the "Lender Defendants"), alleges as follows:

## I. PARTIES

1. Plaintiff Larry Bertsch is an individual who resides in Nevada. Plaintiff brings this action in his capacity as Receiver of Southwest, Blackstone, and other entities.

2. By orders dated February 7, 2007, and May, 2007, of the District Court, Clark County, Nevada (the "Receivership Orders"), Plaintiff was appointed as the Receiver for Southwest, Blackstone, and other entities with full power, *inter alia*, to take custody and control over, conserve, protect and sue for, collect and take into possession all assets of Southwest and the other receivership entities. The Receivership Orders also charge Plaintiff with performing all other acts necessary or advisable to preserve the value of and prevent any irreparable loss, damage or injury to those assets, including obtaining an accounting. Among the assets that the Receiver is empowered to sue for, collect and take possession of are the tens of millions of dollars that Southwest held in trust for its clients and that was improperly misappropriated to pay for MediCor's acquisition of Eurosilicone.

---

[1] The other entities covered by the receivership are Sirius Capital, LLC, International Integrated Industries, LLC, NexGen Management, Inc., Americade, LLC, Global Aviation Delaware, LLC, McGhan Development Corp., Global Asset Management, West Vegas, LP, Bianathar, LLC, Trinity Star Ventures, LLC, and Ventana Coast, LLC.

3.     Two of the entities for which Plaintiff serves as Receiver – Sirius Capital, LLC and International Integrated Industries, LLC – are listed by MediCor in its bankruptcy schedules as the largest unsecured creditors.

4.     Defendant MediCor is a Delaware corporation.   MediCor and its direct and indirect subsidiaries, including the other debtors, operate as a single business unit across multiple geographic locations within the United States and internationally.   The debtors and their non-debtor subsidiaries are in the business of acquiring, developing, manufacturing, and selling products primarily for the aesthetic, plastic and reconstructive surgery and dermatology markets, including but not limited to breast implants.

5.     Upon information and belief, Defendant MediCor Europe is a foreign corporation existing under the laws of Denmark and is a wholly-owned subsidiary of MediCor.

6.     Upon information and belief, Defendant ES Holdings is incorporated under the laws of France and is a wholly-owned subsidiary of MediCor Europe.

7.     Upon information and belief, Defendant Eurosilicone is incorporated under the laws of France and is a wholly-owned subsidiary of ES Holdings.

8.     Upon information and belief, Defendant Silver Oak Capital, LLC ("Silver Oak") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located in the state of New York.   Silver Oak is a hedge fund.

9.     Upon information and belief, Defendant HFTP Investments, LLC ("HFTP") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located in the state of New York.   HFTP is a hedge fund.

10.     Upon information and belief, Defendant Promethean I Master, Ltd f/k/a GAIA Offshore Master Fund, LTD ("Promethean I") is a business entity having an office in New York. Promethean I is a hedge fund.

11.     Upon information and belief, Defendant Promethean II Master, LP ("Promethean II") is a business entity having an office in New York.  Promethean II is a hedge fund.

12.     Upon information and belief, Defendant Portside Growth and Opportunity Funds ("Portside") is a business entity having an office in New York.  Portside is a hedge fund.

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 in that this proceeding arises under Title 11 of United States Code (the "Bankruptcy Code") and is related to the Chapter 11 cases filed by MediCor, Ltd., *et. al.* ("Debtors") on June 29, 2007 in the United States Bankruptcy Court for the District of Delaware.

14.     This is a core proceeding that the Court may hear and determine pursuant to 28 U.S.C. § 157(E), (H), (K), and (O).

15.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     FACTUAL BACKGROUND

### a.     Don McGhan and MediCor

16.     In 1999, Donald K. McGhan ("Don McGhan") founded MediCor and at all times relevant to this adversary proceeding served as the chairman of MediCor's board of directors until his resignation on or about January 24, 2007.  Don McGhan's resignation occurred in the wake of the collapse of Southwest.

17.     Don McGhan is the principal shareholder of MediCor.  His son Jim J. McGhan ("Jim McGhan") and daughter Nikki N. Pomeroy ("Pomeroy") are or were at all times relevant to this adversary proceeding the second and third largest shareholders of MediCor, respectively.

At all times relevant to this adversary proceeding, Jim McGhan served as a director of MediCor and, until MediCor's bankruptcy filing, he served as its chief operating officer.

18.     At all times relevant to this adversary proceeding, Don McGhan exercised domination and control over MediCor. Don McGhan made or approved all of MediCor's major decisions, including but not limited to MediCor's decisions to borrow money, to grant liens and security interests, to create subsidiaries, and to acquire other businesses either directly or through its subsidiaries.

### b.     Don McGhan's Need for Cash to Complete Acquisition of Eurosilicone

19.     MediCor entered into a definitive agreement (the "Acquisition Agreement") dated May 17, 2004, to acquire all of the shares of stock in Eurosilicone, a French company that manufactured and sold an existing line of breast implants in Europe. Don McGhan represented MediCor in the transaction and signed the purchase agreement on behalf of MediCor.

20.     On or about May 19, 2004, MediCor publicly announced the Acquisition Agreement. According to the public announcement, the closing of MediCor's acquisition of Eurosilicone was "subject to concluding MediCor's financing and other customary conditions."

21.     Upon information and belief, MediCor did not have the funds needed to close the Acquisition Agreement.

22.     Upon information and belief, Don McGhan and other officers and directors of MediCor identified Southwest as a potential source of funds to complete MediCor's acquisition of Eurosilicone.

### c.     Don McGhan's Acquisition of Cash-Laden Southwest

23.     At all relevant times, Southwest was a qualified intermediary under 26 U.S.C. § 1031 and Chapter 645 of the Nevada Revised Statutes.

24.     Southwest was in the business of assisting its clients to effectuate exchanges of like-kind property and defer recognition of taxable gain in accordance with 26 U.S.C. § 1031. Pursuant to exchange agreements with its clients, Southwest received the cash proceeds from the sales of its clients' relinquished properties and was supposed to hold the proceeds in trust until needed for the purchase like-kind replacement property qualifying for tax deferral under Section 1031. In the ordinary course of its business, Southwest was entrusted with tens of millions of its clients' dollars. Southwest deposited the proceeds of its clients' property sales in Southwest accounts at Citigroup.

25.     On or about June 12, 2004, Don McGhan met with Betty Kincaid ("Kincaid"), the founder of Southwest, to discuss purchase of the company.

26.     On or about June 15, 2004, Capital Reef Management Corporation ("Capital Reef") was formed as a Delaware corporation by Don McGhan and others for the purpose of acquiring Southwest. Promptly following the formation of Capital Reef, the acquisition was completed, with Southwest's becoming a wholly-owned subsidiary of Capital Reef. Kincaid received a 25% ownership interest in Capital Reef and was paid $3 million for her controlling interest in Southwest.

### d.     Don McGhan's Use of Blackstone to Misappropriate and Divert Southwest's Cash

27.     Promptly after acquiring Southwest through Capital Reef, Don McGhan caused Southwest to liquidate its accounts at Citigroup holding exchange money and transfer the money to Blackstone. Blackstone gave Southwest worthless unsecured promissory notes for the money.

28.     Blackstone is a Delaware limited liability company owned by Don McGhan, his wife Shirley McGhan and/or his daughter Pomeroy.

29.     In late June and early July, 2004, Blackstone transferred at least $37,000,000 of the money it had received from Southwest to the account of M. Francois Tourniaire ("Tourniaire") at Banque BNP Paribas in France. Tourniaire and other French nationals (the "Tourniaire Group") were the owners of Eurosilicone's stock and parties to the Acquisition Agreement with MediCor.

30.     Blackstone transferred money to Tourniaire for the purpose of funding MediCor's acquisition of Eurosilicone. Neither Blackstone nor Southwest received any consideration for Blackstone's transfers of money to Tourniaire.

31.     Shirley McGhan and Pomeroy instructed Blackstone's bank to wire transfer at least $37,000,000 to Tourniaire to fund the acquisition of Eurosilicone's stock.   Pomeroy gave the wire transfer instructions in her capacity as President of Blackstone.  Upon information and belief, Shirley McGhan gave the wire transfer instructions in her capacity as owner of Blackstone.

**e.     Completion of Eurosilicone Acquisition**

32.     Less than one month after Don McGhan had acquired Southwest through Capital Reef, MediCor publicly announced, on July 6, 2004, that it had completed its acquisition of Eurosilicone.

33.     MediCor did not acquire the stock of Eurosilicone directly. Instead, MediCor assigned its rights under the Acquisition Agreement to a wholly-owned, second tier subsidiary, ES Holdings.  ES Holdings is 100% owned by MediCor Europe, and MediCor Europe is 100% owned by MediCor.

34.     At the closing of Acquisition Agreement, ES Holding took title to the Tourniaire Group's stock in Eurosilicone, and the Tourniaire Group received the cash purchase price funded by Blackstone.

35.     Upon information and belief, neither MediCor nor any of its subsidiaries, including ES Holdings and MediCor Europe, ever had the financial means or intent to repay Blackstone for transferring to Tourniaire the funds that Blackstone had misappropriated from Southwest.

36.     MediCor and its subsidiaries, including ES Holdings and MediCor Europe, failed to repay Blackstone for transferring funds to Tourniaire. Blackstone has never been repaid for its wire transfers of at least $37,000,000 to Tourniaire.

### f.     Ponzi Scheme Perpetuates the Fraud Until Southwest Collapses

37.     The misappropriation and diversion of Southwest's funds by Don McGhan and his accomplices resulted in a significant deficit in Southwest's cash needed to complete Section 1031 exchange transactions. Consequently, Don McGhan and Southwest used sale proceeds deposited by new clients to fund the purchases of replacement properties by existing clients, resulting in a ponzi scheme that required new money to fund existing obligations.

38.     Don McGhan and Southwest continued to advertise and solicit business for Southwest throughout the balance of 2004, 2005 and 2006 under the false premise that money entrusted by clients to Southwest would be held and preserved until needed to complete their purchases of replacement properties.

### g.     Lenders' Pre-Petition Loans to MediCor and Subsidiaries

39.     Upon information and belief, on or about April 26, 2006, MediCor borrowed $50 million from a group of hedge funds consisting of Defendants Silver Oak, HFTP, Promethean I,

and Portside (the "Pre-Petition Lenders"). Upon information and belief, the Pre-Petition Lenders were later expanded to include Defendant Promethean II.

40.     Upon information and belief, the indebtedness owed by MediCor to the Pre-Petition Lenders is evidenced by senior secured convertible notes (the "Convertible Notes"), a Guarantee and Collateral Agreement, and other loan documents, as amended.

41.     Upon information and belief, the Convertible Notes issued by MediCor are guaranteed by International Integrated Incorporated, HPL Biomedical, and most of the other debtors in these cases including MediCor Mgmt., MediCor Aesthetics, MediCor Development, PIP America, and IPI (collectively the "Guarantors").

42.     Upon information and belief, the Convertible Notes are secured by substantially all of the assets of MediCor and of the Guarantors including but not limited to 100% of the capital stock owned by MediCor in MediCor Europe.

43.     Upon information and belief, from and after January 30, 2007, the Pre-Petition Lenders made one or more loans to Eurosilicone evidenced by promissory notes (the "Eurosilcone Notes") that are guaranteed by MediCor and the Guarantors and that are secured by liens granted in certain assets. Upon information and belief, the current principal balance owed under the Eurosilicone Notes is more than $700,000. Upon information and belief, Eurosilicone has not granted the Pre-Petition Lenders a security interest in any of its assets.

44.     Upon information and belief, from and after March 30, 2007, the Pre-Petition Lenders have made one or more loans to ES Holdings evidenced by promissory notes (the "ES Holdings Notes") that are guaranteed and secured to the same extent as the Convertible Notes. Upon information and belief, the current principal balance owed under the ES Holdings Notes is

more than $3,600,000. Upon information and belief, ES Holdings has not granted the Pre-Petition Lenders a security interest in any of its assets.

### h. Lenders' Post-Petition Loans to MediCor and Debtor Subsidiaries

45.     Pursuant to interim and final orders (the "Orders") entered July 13, 2007, and August 28, 2007, the Court approved a debtor-in-possession loan facility (the "DIP Facility") from the Pre-Petition Lenders (hereinafter referred to as the "DIP Lenders" with respect to the DIP Facility) to MediCor. Loans under the DIP Facility are secured by the assets of all of the debtors, including MediCor's stock in MediCor Europe.

46.     The Pre-Petition Lenders and the DIP Lenders are the same parties and are hereinafter collectively referred to as the "Lenders."

## IV.   CLAIMS

### COUNT I

### (Claim Against ES Holdings, MediCor Europe and MediCor For Fraudulent Transfers)

47.     Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 46 as fully set forth herein.

48.     The misappropriation and transfer of Southwest's money, including money held in trust by SWX for its clients, to Blackstone and, in turn, from Blackstone to Tourniaire, coupled with the transfer of the stock in Eurosilicone to ES Holdings for the money paid by Blackstone to Tourniaire constitutes a series of related fraudulent transfers (the "Fraudulent Transfers").

49.     The Fraudulent Transfers were made with actual intent to hinder, delay or defraud creditors of Blackstone.

50.     The Fraudulent Transfers were made without Blackstone's receiving reasonably equivalent value in exchange for its transfer of money to Tourniaire.

51.     At the time of its transfers to Tourniaire, Blackstone was engaged or was about to engage in a business or a transaction for which the remaining assets of Blackstone were unreasonably small in relation to the business or transaction.

52.     At the time of its transfers to Tourniaire, Blackstone intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due. Specifically, Blackstone believed or should have believed that it would not receive the stock in Eurosilicone or other valuable consideration for the money it transferred to Tourniaire. Moreover, Blackstone believed or should have believed that after transferring at least $37,000,000 to Tourniaire, it would not be able to repay the unsecured promissory notes to Southwest when they became due.

53.     Although MediCor and MediCor Europe were not directly parties to the Fraudulent Transfers, each was fraudulently benefited and unjustly enriched by the Fraudulent Transfers. MediCor Europe was fraudulently benefited and unjustly enriched by the Fraudulent Transfers in that it owns the stock of ES Holdings which took title to the Eurosilicone stock without paying any consideration. MediCor was fraudulently benefited and unjustly enriched by the Fraudulent Transfers in that it owns the stock of MediCor Europe which, in turn, owns the stock ES Holdings which took title to the Eurosilicone stock without paying any consideration.

54.     Because of the Fraudulent Transfers, Plaintiff has been injured and damaged for which it seeks as a remedy the imposition of a constructive trust or equitable lien on the stock of Eurosilicone immediately after the conveyance of same to ES Holdings by the Tourniaire Group, all of the stock of ES Holdings owned by MediCor Europe, all of the stock of MediCor Europe

owned by MediCor, and the proceeds from the sale of any of said stock (collectively the "Trust Assets"), said trust or lien to be in the amount of the total funds of Southwest that were improperly and fraudulently transferred to Blackstone and that Blackstone thereafter improperly and fraudulently transferred to Tourniaire and to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings.

**COUNT II**

**(Claim Against ES Holdings, MediCor Europe and MediCor
For Unjust Enrichment)**

55.　Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 54 as fully set forth herein.

56.　If ES Holdings were allowed to retain ownership of the Eurosilicone stock, it would be unfair and against the fundamental principles of justice, equity and good conscience because the stock rightfully belongs to Blackstone and Southwest who paid Tourniaire for the stock.

57.　If ES Holdings were allowed to retain ownership of the Eurosilicone stock, it would be unjustly enriched because it did not pay for the stock. Similarly, MediCor Europe would be unjustly enriched as the owner of ES Holdings, and MediCor would be unjustly enriched as the owner of MediCor Europe. Finally, Don McGhan, his wife Shirley McGhan, and his daughter Pomeroy, as the principal shareholders of MediCor, would be unjustly enriched if ES Holdings were allowed to retain ownership of the Eurosilicone stock.

58.　There is no justification for allowing ES Holdings to retain ownership of the Eurosilicone stock.

59. Plaintiff has no adequate remedy at law to recover the money that was fraudulently transferred by Southwest and Blackstone to Tourniaire for the acquisition of the Eurosilicone stock.

60. Based upon the allegations above, Plaintiff is entitled, as a remedy for unjust enrichment, to equitable relief in the form of a constructive trust on all of the Trust Assets, said trust to be at least in the amount of the total funds of Southwest that were improperly and fraudulently transferred to Blackstone and that Blackstone thereafter improperly and fraudulently transferred to Tourniaire and said trust to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings.

## COUNT III

### (Claim against ES Holdings, MediCor Europe and MediCor For Express or Resulting Trust)

61. Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 60 as fully set fort herein.

62. Southwest and each of its clients intended that Southwest would hold in trust the proceeds from the sale of the client's property until either used by Southwest to purchase other like-kind property in completing a Section 1031 exchange or returned by Southwest to the client. Each time Southwest received proceeds from the sale of a client's property, an express trust arose with respect to those proceeds as to which Southwest was the trustee and the client was the beneficiary. Each such trust remained in existence until Southwest either used the proceeds to pay for the client's purchase of other property qualifying for a Section 1031 exchange or returned the proceeds to the client.

63. Most, if not all, of the funds misappropriated and transferred from Southwest to Blackstone and, in turn, from Blackstone to Tourniaire were proceeds from property sales by

Southwest's clients and were being held in trust by Southwest for its clients at the time they were misappropriated and transferred from Southwest's account at Citigroup to Blackstone.

64. The trust imposed on the funds held by Southwest for its clients continued in those funds upon their misappropriation and transfer to Blackstone, in the funds transferred by Blackstone to Tourniaire, and to the Trust Assets which the trust funds were used to purchase.

65. Based upon the allegations above, Plaintiff is entitled to judgment for an express trust on all of the Trust Assets, said trust to be at least in the amount of the funds that Southwest was holding or intended to be holding in trust for its clients and that were improperly and fraudulently transferred from Southwest to Blackstone and thereafter from Blackstone to Tourniaire, and said trust to attach to the Trust Assets when Eurosilicone stock was conveyed to ES Holdings.

66. Southwest and its clients clearly intended for the clients' property sales proceeds to be held in trust by Southwest. If the Court should determine that, despite their intent, Southwest and any of its clients failed to create or maintain an express trust, then Plaintiff is entitled to judgment for a resulting trust on all of the Trust Assets, said trust to be at least in the amount of the funds of that Southwest was holding or intended to be holding in trust for its clients and that were improperly and fraudulently transferred from Southwest to Blackstone and thereafter from Blackstone to Tourniaire, and said trust to attach to the Trust Assets when Eurosilicone stock was conveyed to ES Holdings.

## COUNT IV

### (Claim against ES Holdings, MediCor Europe and MediCor for Constructive Trust)

67. Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 66 as fully set fort herein.

68.     The misappropriation and transfer of Southwest's money, including money held in trust by Southwest for its clients, to MediCor, through the use of bogus promissory notes issued by Blackstone and the wire transfers to Tourniaire to fund ES Holdings' acquisition of Eurosilicone from the Tourniaire Group, all as more particularly alleged above, was a fraudulent, unfair or unconscionable scheme concocted and implemented by Don McGhan, Shirley McGhan, Pomeroy and others acting at their direction and in concert with them for the purpose of obtaining sufficient funds to complete the acquisition of Eurosilicone by ES Holdings as assignee of MediCor's purchase rights under the Acquisition Agreement.

69.     The transfers of money from Southwest to Blackstone and from Blackstone to Tourniaire were fraudulent, unfair or unconscionable.

70.     Don McGhan was an officer, director, and the person in control of Southwest. Don McGhan was a licensed Section 1031 Exchange Accommodator and designated as the individual "Intermediary" in exchange agreements between Southwest and its clients. As such, Don McGhan was entrusted with the proceeds of property sales by Southwest's clients. Don McGhan was a fiduciary to Southwest and its clients. McGhan owed a duty to Southwest and its clients to preserve and protect the proceeds of property sales until they were needed to fund replacement property purchases to complete Section 1031 transactions. The movement of money from Southwest to Blackstone was fundamentally unfair and constitutes conversion and a breach of duty by Don McGhan.

71.     Don McGhan, his wife Shirley McGhan, and his daughter Pomeroy each owed a duty to Blackstone as an owner, officer and/or director of Blackstone.

72.     Don McGhan, Shirley McGhan, Pomeroy, MediCor, MediCor Europe and ES Holdings would each be unjustly enriched if they were permitted to retain direct and indirect

ownership of Eurosilicone whose stock was purchased with money misappropriated from Southwest.

73.     Based upon the allegations above, Plaintiff is entitled to a constructive trust imposed on all of the Trust Assets, said trust to be at least in the amount of the total funds of Southwest that were improperly and fraudulently transferred from Southwest to Blackstone and thereafter from Blackstone to Tourniaire, and said trust to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings.

## COUNT V

### (Claim against ES Holdings, Medicor Europe, and MediCor for Turnover of Trust Assets)

74.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 73 above, as if fully set forth herein.

75.     ES Holdings, MediCor Europe, and MediCor have no equitable interest in the Trust Assets.  At most, ES Holdings, MediCor Europe and MediCor have bare legal title to the Trust Assets.

76.     Plaintiff has the equitable interest in and is the equitable owner of the Trust Assets.

77.     Based upon the allegations above, Plaintiff is entitled to an order by the Court requiring ES Holdings, MediCor Europe, and MediCor to turn over ownership, custody, possession and control of the Trust Assets to Plaintiff.

## COUNT VI

### (Claim against ES Holdings, MediCor, and MediCor Europe for Equitable Lien)

78. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 77 above, as if fully set forth herein.

79. Based upon the allegations above, Plaintiff is entitled to an equitable lien imposed on the Trust Assets, said lien to be in the amount of the total funds of Southwest that were improperly and fraudulently transferred to Blackstone and that Blackstone thereafter improperly and fraudulently transferred to Tourniaire and said lien to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings.

## COUNT VII

**(Claim against ES Holdings, MediCor Europe and MediCor
for Declaratory Judgment and Determination That Plaintiff's Constructive Trust
and Equitable Lien Are Not Avoidable)**

80. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 79 above, as if fully set forth herein.

81. An actual, justiciable controversy exists between (a) Plaintiff and (b) ES Holdings, MediCor Europe and MediCor as to whether the Plaintiff's constructive trust and/or equitable lien in the Trust Assets is avoidable under 11 U.S.C. § 544 or any other applicable law.

82. Based upon the allegations above, Plaintiff is entitled to a declaratory judgment and determination by the Court that his constructive trust and/or equitable lien interests in the Trust Assets being held by MediCor (i.e., MediCor's stock in MediCor Europe and the proceeds from any sale of said stock) are not avoidable under 11 U.S.C. § 544 or any other applicable law and that his constructive trust and/or equitable lien interests in the Trust Assets being held by ES Holdings and MediCor Europe (i.e., MediCor Europe's stock in ES Holdings, ES Holding's stock in Eurosilicone, and the proceeds from any sale of said stock) are not avoidable under any applicable law.

## COUNT VIII

**(Claim against MediCor and the Other Debtors
for Declaratory Judgment and Determination That Trust Assets Are Not
Property of Debtors' Bankruptcy Estates)**

83.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 82 above, as if fully set forth herein.

84.     The Trust Assets being held by MediCor Europe and ES Holdings (i.e., MediCor Europe's stock in ES Holdings, ES Holdings' stock in Eurosilicone, and the proceeds from any sale of said stock) are not property of the Debtors or of their bankruptcy estates.

85.     With respect to the Trust Assets being held by MediCor (i.e., MediCor's stock in MediCor Europe and the proceeds from any sale of said stock), MediCor has, at best, only bare legal title thereto and has no equitable interest therein.

86.     Plaintiff has the equitable title to and equitable interest in all of the Trust Assets by virtue of his constructive trust.

87.     An actual, justiciable  controversy exists between Plaintiff and the Debtors as to whether the Trust Assets are property of the Debtors' bankruptcy estates.

88.     Based upon the allegations above, Plaintiff is entitled to a declaratory judgment and determination by the Court that the Trust Assets are not property of the Debtors' bankruptcy estates under 11 U.S.C. § 541(d).

## COUNT IX

**(Claim against Lenders
for Declaratory Judgment and Determination That Lenders' Liens and
Security Interests Either Do Not Attach to the Trust Assets or
Are Subordinate and Junior in Priority to Plaintiff's Interests in the Trust Assets)**

89.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 88 above, as if fully set forth herein.

90.     Because ES Holdings, MediCor Europe, and MediCor never had equitable title to or any equitable interest in the cash misappropriated from Southwest or the Trust Assets purchased with said cash, they had no right to grant liens or security interests in the Trust Assets or to pledge the Trust Assets as collateral for loans.  ES Holdings', Medicor Europe's and MediCor's purported granting of liens in the Trust Assets to secure loans by the Lenders, both pre-petition and post-petition under the DIP Facility, are invalid and void.

91.     An actual, justiciable  controversy exists between Plaintiff and the Lenders as to whether the Lenders' liens and security interests either do not attach to the Trust Assets or are subordinate and inferior to Plaintiff's interests in the Trust Assets.

92.     Based upon the allegations above, Plaintiff is entitled to a declaratory judgment and determination by the Court that the Lenders' liens and security interests do not attach to the Trust Assets.  If the Court should determine that any of Lenders' liens and security interests do attach to any of the Trust Assets, Plaintiff is entitled to a declaratory judgment and determination by the Court that said interests of Lenders are subordinate and junior in priority to Plaintiff's constructive trust and/or equitable lien interests in the Trust Assets.

## COUNT X

### (Claim against Debtors, MediCor Europe and ES Holdings
### for Accounting)

93.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 92 above, as if fully set forth herein.

94.     Because the Trust Assets being held by the MediCor and the other debtors, MediCor Europe, and ES Holdings were funded by funds that were improperly and fraudulently transferred from Southwest to Blackstone and from Blackstone to Tourniaire, the Receiver is entitled to an accounting from MediCor and the other debtors, MediCor Europe and ES Holdings

of all receipts and disbursements, including but not limited to a complete accounting of their sources and uses of funds, from June 1, 2004, to present.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Larry L. Bertsch, as court-appointed receiver of Southwest, Blackstone, and other entities prays for judgment that:

A.    Southwest's transfers of money to Blackstone, Blackstone's transfers of money to Tourniaire, and Tourniaire's transfer of title in the Eurosilicone stock to ES Holdings were fraudulent transfers causing injury and damage to Plaintiff;

B.    ES Holdings, MediCor Europe and MediCor have been unjustly enriched by ES Holdings' ownership of the Eurosilicone stock;

C.    Plaintiff is entitled to an express or resulting trust on the Trust Assets, said trust to be at least in the amount of the funds that Southwest was holding or intended to be holding in trust for its clients and that were transferred from Southwest to Blackstone and thereafter from Blackstone to Tourniaire and said trust to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings;

D.    Plaintiff is entitled to a constructive trust on the Trust Assets, said trust to be at least in the amount of the total funds that were transferred from Southwest to Blackstone and thereafter from Blackstone to Tourniaire and said trust to attach to the Trust Assets when title to the Eurosilicone stock was conveyed to ES Holdings;

E.    ES Holdings, MediCor Europe and MediCor turn over to Plaintiff ownership, custody, possession and control of the Trust Assets;

F.     Plaintiff's constructive trust and equitable lien in the Trust Assets are not avoidable under 11 U.S.C. §544 or other applicable law;

G.     Trust Assets are not property of the Debtors' bankruptcy estates under 11 U.S.C. §541(d);

H.     Lender's liens and security interests either do not attach to the Trust Assets or, if they do attach, are subordinate and junior in priority to Plaintiff's interests in the Trust Assets;

I.     Debtors, MediCor Europe and ES Holdings must render a full accounting to Plaintiff of all receipts and disbursements, including but not limited to a complete accounting of their sources and uses of funds, from June 1, 2004, to present; and

J.     Plaintiff is entitled to is entitled to his costs in this action and to such other and further relief as the Court deems just and proper in the circumstances.

Dated: December 17, 2007

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

By: _____

Francis A. Monaco, Jr. (Del Bar No. 2078)
Kevin J. Mangan (Del Bar No. 3810)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel.: (302) 252-4363
Fax: (302) 661-7728

William B. Sullivan (NC Bar No. 17758)
Philip J. Mohr (NC Bar No. 24427)
One West Fourth Street
Winston-Salem, NC 27101
Tel.: (336) 721-3506
Fax: (336) 733-8365

Attorneys for Plaintiff